## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| BETH CHANEY MACNEILL, | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4-14CV-242-0 |
| | § | |
| NIRMAL JAYASEELAN, M.D.; | § | |
| DOMINGO K. TAN, M.D.; CHAD | § | |
| CARLTON, M.D.; TEXAS HEALTH | § | |
| HARRIS METHODIST HOSPITAL | § | |
| FORT WORTH; EMERGENCY MEDICINE | § | |
| CONSULTANTS LTD; BAYLOR ALL | § | |
| SAINTS MEDICAL CENTER AT | § | |
| FORT WORTH AND EMCARE, INC., | § | |
| | § | |
| **DEFENDANTS.** | § | |

## BAYLOR ALL SAINTS MEDICAL CENTER AT FORT WORTH'S
## RULE 12 (b)(6) MOTION TO DIMISS

### TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW,** Baylor All Saints Medical Center at Fort Worth ("All Saints"), and

pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, makes and files its

Rule 12(b)(6) Motion to Dismiss as follows:

### I.

### BACKGROUND

Plaintiff asserts claims against All Saints and six other named defendants. Plaintiff's

only claim against All Saints is based on its alleged violation of the EMERGENCY MEDICAL

TREATMENT AND LABOR ACT ("EMTALA"), as set forth in 42 U.S.C.A., §1395dd (Plaintiff's

Original Complaint, page 11, paragraphs 8.1 – 8.5). Plaintiff's claim against All Saints is limited

to Plaintiff's care and treatment at All Saints on April 29-30, 2012 (Plaintiff's Original

Complaint, pages 7-8, paragraphs 4.4-4.10). Plaintiff does not assert any Texas state law

medical malpractice claim against All Saints (Plaintiff's Original Petition, page 11, paragraphs 8.1-8.5)(*Compare,* Plaintiff's Original Petition, page 8, NEGLIGENCE, Nirmal Jayaseelan, M.D., paragraphs 5.1-5.4).

Plaintiff also alleges that All Saints is vicariously liable for the conduct of Defendants Domingo Tan, M.D., Chad Carlton, M.D. and EmCare, Inc. under the theory of ostensible agency (Plaintiff's Original Petition, page 13, paragraph 12.2).  Plaintiff, however, only alleges EMTALA claims against Dr. Tan, Dr. Carlton and EmCare, Inc. (Plaintiff's Original Petition, pages 11-12, paragraphs 9.1-9.5, 10.1, and 11.1-11.2).  Plaintiff does not allege any Texas state law medical malpractice claims against either Dr. Tan, Dr. Carlton or EmCare, Inc.

## II.

## RELIEF REQUESTED

Pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, All Saints requests that Plaintiff's claims against it be dismissed for failure to state a claim upon which relief can be granted.  Because Plaintiff only asserts an EMTALA claim against All Saints (and against the providers alleged to be ostensible agents of All Saints), Plaintiff's entire claim against All Saints should be dismissed.

## III.

## ARGUMENTS AND AUTHORITIES

### A.  Rule 12(b)(6) Motions:

Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE allows a defendant like All Saints to move for dismissal of a complaint based on the complaint's failure to state a claim upon which relief can be granted.  FED. R. CIV. P., Rule 12(b)(6).  *See also, Liles v. TH Healthcare, Ltd.,* 2012 U.S. Dist. LEXIS 128352 *6 (E.D. Tex. September 10, 2012).  The purpose of

Rule 12(b)(6) is to allow "a court to eliminate actions which are fatally flawed in their legal premises and destined to fail, thus sparing the litigants the burden of unnecessary pretrial and trial activity." *Desert Eagle Distributing of El Paso, Inc. v. KPMG LLP,* 2008 U.S. Dist. LEXIS 26315 *7 (W.D. Tex. January 22, 2008)(citing *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). When a Rule 12(b)(6) motion to dismiss is considered, courts look at the allegations in the complaint to determine if they are sufficient to survive dismissal. *See, Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

While the complaint does not need to have detailed factual allegations, to survive a Rule 12(b)(6) motion to dismiss the complaint must contain "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint must contain "sufficient facts to state a claim to relief that is plausible on its face." *Id,* 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Put another way, the facts provided in the complaint must be of sufficient specificity to support an inference beyond the mere possibility the misconduct alleged occurred. *Iqbal,* 556 U.S. at 678. If the facts in the complaint are not sufficient to support more than the possibility of misconduct, the complaint does not show that the plaintiff is entitled to relief. *Id.,* 556 U.S. at 679. A complaint is insufficient under Rule 12(b)(6) in these respects when it contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

Even though courts must accept as true the allegations in a complaint when considering Rule 12(b)(6) motions, this requirement does not apply to "legal" conclusions set forth in the complaint.  *Id.*, 556 U.S. at 678.   Similarly, "conclusory allegations" in the complaint are disregarded.  *Cherry v. Columbia Medical Center of McKinney Subsidiary, L.P.,* 2011 U.S. Dist. Lᴇxɪs 89241 *10 (N.D. Tex. July 19, 2011)(citing *Iqbal,* 556 U.S. at 680-81).   Further, when construing a complaint under Rule 12(b)(6), courts can consider and act on omitted facts. Specifically, "[i]f a Complaint omits facts concerning pivotal elements of the pleader's claim, the court is justified in assuming the nonexistence of such facts."  *Ledesma v. Dillard Department Stores, Inc.,* 818 F. Supp. 983, 984 (N.D. Tex. 1993).   *See also, Schied v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6ᵗʰ Cir. 1988)("when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist"); *Sherman v. Dallas ISD,* 2011 U.S. Dist. Lᴇxɪs 13143 *18 (N.D. Tex. January 24, 2011); *Desert Eagle Distributing of El Paso, Inc.,* 2008 U.S. Dist. Lᴇxɪs 26315 at *7-8; *Matta v. May,* 888 F.Supp. 808, 813 (S.D. Tex. 1995).

### B.  Plaintiff's EMTALA Claims Against All Saints:

EMTALA was enacted by the United States Congress to prevent "patient dumping."  *See, Marshall v. East Carroll Parish Hospital,* 134 F.3d 319, 322 (5ᵗʰ Cir. 1998).   EMTALA was not enacted to guarantee proper emergency medical care.  *Id.*  One "core purpose of EMTALA … is to prevent hospitals from failing to examine and stabilize uninsured patients who seek emergency treatment."  *Hardy v. New York City Health & Hospital Corp.,* 164 F.3d 789, 795 (2ⁿᵈ Cir. 1999).   Another "core purpose is to get patients into the system who might otherwise go untreated and be left without a [legal] remedy."  *Bryan v. Rectors & Visitors of University of Virginia,* 95 F.3d 349, 351 (4ᵗʰ Cir. 1996).   EMTALA was designed so there would be an

"'adequate first response to a medical crisis' for all patients." *Baber v. Hospital Corporation of America,* 977 F.2d 872, 880 (4th Cir. 1992)(quoting Senator Dave Durenberger, 131 Cong. Rec. S13904 (Oct. 23, 1985)).

EMTALA does not create a federal medical malpractice cause of action or set a nationwide standard of care. *Marshall,* 134 F.3d at 322. What EMTALA did do is "create a new cause of action, generally unavailable under state tort law, for what amounts to a failure to treat." *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C. Cir. 1991). EMTALA created this "new" cause of action because under most states' traditional tort law hospitals were not under a duty to provide emergency medical care. *See, Brooks v. Maryland General Hospital, Inc.,* 996 F.2d 708, 710 (4th Cir. 1993).

For these reasons, EMTALA does not duplicate or replace state medical malpractice law protections that already exist. *See, Summers v. Baptist Medical Center,* 91 F.3d 1132, 1137 (8th Cir. 1996). EMTALA is only a "'gap-filler' for state malpractice law, giving patients who would otherwise have no claim in state court a forum to redress their injuries." *Root v. Liberty Emergency Physicians, Inc.,* 68 F.Supp.2d 1086, 1091 (W.D. Mo. 1999), *aff'd,* 209 F.3d 1068 (8th Cir. 2000).

Plaintiff's EMTALA claim against All Saints is set forth on Page 11, Paragraphs 8.1 – 8.5 of Plaintiff's Original Complaint. Her EMTALA claims against Dr. Tan, Dr. Carlton and EmCare, Inc. (All Saints' alleged ostensible agents) are set forth on pages 11 and 12 of her complaint. Review of these portions of the complaint shows that Plaintiff's EMTALA causes of action can be categorized as follows:

- A medical screening-based cause of action (Plaintiff's Original Complaint, pages 11-12, paragraphs 8.1-8.3, and 9.1-9.3);

- A failure to stabilize cause of action (Plaintiff's Original Complaint, pages 11-12, paragraphs 8.4, 9.4, 10.1, and 11.1) and;

- A failure to timely transfer cause of action (Plaintiff's Original Complaint, pages 11-12, paragraphs (8.5, 9.5, and 11.2).

Based on the arguments and authorities set forth below, with respect to each and every EMTALA cause of action alleged, Plaintiff has failed to state a claim upon which relief can be granted against All Saints.

### 1. Plaintiff's Medical Screening Examination EMTALA Cause of Action:

EMTALA does not define what constitutes an "appropriate medical screening examination."   EMTALA does state that the purpose of the required medical screening examination is to look for an emergency medical condition.   42 U.S.C., §1395dd(a)(medical screening examination is to determine "whether or not an emergency medical condition …exists.").   Courts have followed the language of the statute and held that the purpose of EMTALA's medical screening requirement is "to determine whether an 'emergency medical condition exists.'  Nothing more, nothing less." *Collins v. DePaul Hospital,* 963 F.2d 303, 307 (10th Cir. 1992).   For this reason, when the allegations in a complaint show the patient was determined to have an emergency medical condition or that the patient received extensive emergency or inpatient care, dismissal of a "medical screening" cause of action under Rule 12(b)(6) is appropriate.   *See, Brown v. Providence Medical Services,* 2010 U.S. Dist. Lexis 116792 *12 (D. Neb. November 1, 2010); *Benitez-Rodriguez v. Hospital Pavia Hato Rey,* 588 F.Supp.2d 210 (D.P.R. 2008).

Plaintiff's EMTALA medical screening cause of action against All Saints is based on the examination and evaluation she received in the All Saints emergency room on April 29, 2012. Absent from Plaintiff's complaint, however, are any facts that support a medical screening cause

of action against All Saints (*See,* Plaintiff's Original Complaint, pages 7-8, paragraphs 4.4-4.11). Specifically, Plaintiff's complaint provides no facts that support Plaintiff's allegations that her medical screening examination was inappropriate, that appropriate standards of medical screening examinations were not followed, and/or that All Saints failed to establish appropriate medical screening standards.

Plaintiff's medical screening cause of action against All Saints is nothing more than a recital of the elements of that cause of action and conclusory statements that violations occurred. Absent from the complaint are any supporting facts. Because the necessary supporting facts are absent, All Saints is entitled to dismissal of this cause of action under Rule 12(b)(6) because Plaintiff's complaint does not either support an inference (a) All Saints is liable for the misconduct alleged and/or (b) beyond the mere possibility this misconduct occurred. *See, Iqbal,* 556 U.S. at 678-79; *Twombly,* 550 U.S. at 555, 570. In fact, Plaintiff's complaint blatantly omits these "pivotal elements" of her medical screening cause of action. For this additional reason dismissal of this cause of action is proper under Rule 12(b)(6) because the Court can "assum[e] the nonexistence of such facts." *See, Ledesma,* 818 F. Supp. at 984. *See also, Sherman,* 2011 U.S. Dist. Lexis 13142 at *18.

More importantly, however, the facts in Plaintiff's complaint establish Plaintiff does not have a medical screening cause of action against All Saints. The complaint states that following Plaintiff's presentation to the emergency room at All Saints on April 29, 2012, she received an "[e]xamination by EmCare physician Asha Abraham, D.O., [who] discovered [Plaintiff's] medical condition was emergent" (Plaintiff's Original Complaint, page 7, paragraph 4.6). The complaint also states that Plaintiff's emergency room evaluation at All Saints included an assessment of her vital signs (she was "hypotensive, tachycardic"), an abdominal examination

("she was diffusely tender to palpation"), lab testing ("…her creatinine was 2.5.  She was hyperkalemic and her potassium was over 5"), and a CT scan (Plaintiff's Original Complaint, page 7, paragraph 4.6).   After Plaintiff was determined to have an "emergent" condition, consultations were obtained from a general surgeon and a bariatric surgeon, and Plaintiff was kept at All Saints and cared for overnight before she could be transferred back under the care of her surgeon at Forest Park Medical Center the next day (Plaintiff's Original Complaint, page 7-8, paragraphs 4.7-4.9).

EMTALA was designed so there would be "an adequate first response to a medical crisis." *Brooks,* 977 F.2d at 880.  The purpose of EMTALA's medical screening examination requirement is "to determine whether an 'emergency medical condition exists.'  Nothing more, nothing less." *Collins,* 963 F.2d at 307.  The facts Plaintiff alleges in her complaint establish that her medical screening examination at All Saints met both of these global EMTALA goals.  Thus, for policy reasons Plaintiff has failed to state a medical screening cause of action against All Saints.

Additionally, however, Plaintiff admits in her complaint that as a result of her medical screening examination at All Saints, it was "discovered that [her] medical condition was emergent" (Plaintiff's Original Complaint, page 7, paragraph 4.6).  Since Plaintiff admits an emergency medical condition was determined to exist when she was screened at All Saints, her medical screening examination cause of action should be dismissed.

The United States District Court for the Northern District of Illinois was faced with the same situation in *Woessner v. Freeport Memorial Hospital,* 1992 U.S. Dist. LEXIS 5296 (N.D. Ill. April 24, 1992).  In *Woessner,* the court struck plaintiff's EMTALA medical screening cause of action under this same factual situation stating:

> By pleading that defendant determined that plaintiff had an emergency medical condition, plaintiff necessarily must have received the screening examination guaranteed him under subsection (a) of [EMTALA]. Plaintiff cannot now plead that he did not receive an appropriate medical screening examination to determine whether an emergency medical condition existed when the hospital determined that such an emergency medical condition did, in fact, exist.

*Id.* at *10.

*Brown v. Providence Medical Services,* 2010 U.S. Dist. LEXIS 116792 (D. Neb. November 1, 2010) also supports dismissal of Plaintiff's medical screening cause of action. In *Brown,* the patient presented to the emergency room at Providence Medical Center with bleeding following a tonsillectomy. *Id.* at *2. The patient was examined by an emergency room physician and found to have postoperative bleeding, anemia from blood loss and that her pharynx was bleeding and swollen. *Id.* at *3. The physician ordered the patient transferred to another hospital for further evaluation and treatment. En route, the patient arrested and suffered asphyxia. She later died. *Id.*

Suit was filed against Providence Medical Center ("PMC") alleging violations of EMTALA. *Id.* The United States District Court for the District of Nebraska dismissed any EMTALA medical screening examination-based cause of action stating:

> From the factual allegations in the Amended Complaint, one can infer that [the patient] came to PMC with an emergency medical condition. One cannot infer that PMC, or other Defendants acting as agents of PMC, failed to conduct an appropriate medical screening examination to determine the existence of her emergency medical condition. To the contrary, the factual allegations indicate that PMC did determine that KB's condition was of an emergency nature… *Id.* at *12.

*Brown* and *Woessner* are on-point here. Based on the facts alleged by Plaintiff, one cannot infer that an appropriate medical screening examination was not performed in an effort to determine if Plaintiff had an emergency medical condition. To the contrary, the facts show that an appropriate medical screening examination was performed because her emergency medical

condition was "discovered" (Plaintiff's Original Complaint, page 7, paragraph 4.6). Thus, the limited facts that are in Plaintiff's complaint show that she does not have an EMTALA medical screening examination cause of action upon which relief can be granted. *See, Brown*, 2010 U.S. Dist. LEXIS 116792 at *12; *Woessner*, 1992 U.S. Dist. LEXIS 5296 at *10.

*Benitez-Robinson v. Hospital Pavia Hato,* 588 F.Supp.2d 210 (D.P.R. 2008), further supports dismissal of Plaintiff's EMTALA medical screening examination cause of action under Rule 12(b)(6). In *Benitez-Robinson,* plaintiff alleged an EMTALA medical screening examination claim because the patient was initially diagnosed with a cardiac problem, but after later testing the following morning was diagnosed with a ruptured gallbladder. *Id.* at 212. The United States District Court for the District of Puerto Rico granted a Rule 12(b)(6) dismissal of the medical screening examination cause of action stating, "It would border on the absurd to conclude that a hospital that has provided extensive emergency and inpatient care to an individual, failed to screen him or her as it would any other patient in his or her condition." *Id.* at 216.

Here, as in *Benitez-Robinson,* we have facts showing the patient received extensive care at All Saints. Based on the limited facts alleged, we know not only that Plaintiff's emergency medical condition was diagnosed, but we also know that she was seen by at least three physicians (Dr. Abraham, Dr. Tan and Dr. Carlton), that her vital signs were monitored, that she received blood testing and that she received a CT examination (Plaintiff's Original Complaint, page 7, paragraphs 4.6-4.7). Based on the facts alleged by Plaintiff, as stated in *Benitez-Robinson,* "it would border on the absurd" to conclude these facts are sufficient to state a medical screening examination cause of action against All Saints. *See, id.* As such, *Benitez-*

*Robinson* provides further support for All Saints' request that Plaintiff's EMTALA medical screening examination cause of action against it be dismissed under Rule 12(b)(6).

### 2. Plaintiff's Failure to Stabilize EMTALA Cause of Action:

It is not clear from the allegations contained in Plaintiff's Original Complaint whether Plaintiff's failure to stabilize EMTALA cause of action against All Saints is based solely on her treatment at All Saints prior to her transfer, or if it includes an allegation that Plaintiff was not stable on April 30, 2012 when she was transferred from All Saints to Forest Park Medical Center. Out of an abundance of caution, All Saints will argue and show why it is entitled to dismissal of this EMTALA cause of action under Rule 12(b)(6) regardless of the "stabilization" claim asserted by Plaintiff in her complaint.

### a. General Duty of Stabilization Under EMTALA:

All Saints' duty to "stabilize" under EMTALA does not mean that All Saints must have treated Plaintiff's emergency medical condition in full before she was transferred or discharged. *See, Brooker v. Desert Hospital Corp.,* 947 F.2d 412, 415 (9th Cir. 1991); *Bergwall v. MGH Health Services, Inc.,* 243 F.Supp.2d 364, 374 (D. Md. 2002). Specifically, a hospital like All Saints is not required to "fully cure the patient's ailment before moving or discharging her." *Bergwall,* 243 F.Supp.2d at 374. *See also, Brooker,* 947 F.2d at 415. In fact, a patient may be in critical condition "and still be 'stabilized' under the terms of [EMTALA]." *Brooker,* 947 F.2d at 415. *See also, Bergwall,* 243 F.Supp.2d at 374 ("Indeed, consistent with [EMTALA], a patient's condition may be critical and yet still be considered stable"). When considering stabilization claims under EMTALA, it is important for the Court to keep in mind that

> EMTALA's definition of "stability" does not share the same meaning as the medical term "stable condition," which "indicates that a patient's disease process has not changed precipitously or significantly."

*St. Anthony Hospital v. United States Department of Health and Human Services,* 309 F.3d 680, 694 (10th Cir. 2002).

The reason a patient may be in critical condition and still be stable/stabilized under EMTALA is the fact that EMTALA defines "stabilized" as follows:

> The term "stabilized" means, with respect to an emergency medical condition, that no material deterioration of the condition is likely, within reasonable medical probability, to result from the transfer of the individual from a facility.

*Brooker,* 947 F.2d at 415 (quoting 42 U.S.C., §1395dd(e)(4)(B))(now codified in 42 U.S.C., §1395dd(3)(B)).

### b.  Stabilization While At All Saints:

In her complaint, Plaintiff alleges that following her evaluation in the All Saints emergency room by Dr. Abraham (and prior to her transfer to Forest Park Medical Center), she was seen and cared for by two non-emergency room physicians (Dr. Tan and Dr. Carlton, both surgeons), and she was kept at All Saints overnight by those physicians (Plaintiff's Original Complaint, pages 7-8, paragraphs 4.7-4.9).  Under EMTALA case law, Plaintiff's care at All Saints following her medical screening examination is not governed by EMTALA.  That facet of her care is governed "by the state malpractice law that everyone agrees EMTALA was not intended to preempt."  *Bryan,* 95 F.3d at 351-52.  In fact, it has been stated that if EMTALA provided a cause of action for patients treated at a hospital for a number of hours after a medical screening examination, EMTALA would be "a federal malpractice statute, something it was never intended to be."  *Hussain v. Kaiser Foundation, Health Plan,* 914 F.Supp. 1331, 1335 (E.D. Va. 1995).

In an EMTALA case that commented on the United States Court of Appeals for the Fourth Circuit's opinion in *Bryan v. Rectors & Visitors of University of Virginia*, 95 F.3d 349

(4th Cir. 1996) that EMTALA does not apply in these situations, the United States District Court for the Western District of North Carolina stated:

> It is clear that EMTALA is intended to move the indigent patient suffering a medical emergency from the chairs in a waiting room to the examination rooms, where a medical doctor can make a diagnosis. EMTALA would only come into play where an "inappropriate" screening resulting in the patient being turned away before being seen by a treating medical doctor. The *Bryan* court emphasized that once a patient moves from the chairs and sees a medical doctor, the doctor-patient relationship is invoked, the hospital and doctor must provide the care required under common law theories of negligence, and EMTALA is at an end…

*Strickland v. Angel Medical Center, Inc.,* 1999 U.S. Dist. LEXIS 22817 *7-8 (W.D.N.C. June 17, 1999).

Thus, EMTALA does not apply when Plaintiff was at All Saints between her emergency room examination and determination that she had an emergency medical condition and the time of her transfer from All Saints to Forest Park Medical Center. EMTALA does not apply to this facet of Plaintiff's care at All Saints because her care had progressed past the medical screening examination and she was under direct physician care. *See, Bryan,* 95 F.3d at 351-52; *Hussain,* 914 F.Supp. at 1335; *Strickland,* 1999 U.S. Dist. LEXIS 22817 at *7-8.

Even if EMTALA does apply to this facet of Plaintiff's care at All Saints, EMTALA does not require that definitive treatment of her condition be provided at or by All Saints before her transfer to Forest Park Medical Center on April 30, 2012. *See, Brooker,* 947 F.2d at 415; *Bergwall,* 243 F.Supp.2d at 374. In considering the facts alleged in Plaintiff's complaint, the only fact that might support such a "failure to stabilize" cause of action is Plaintiff's complaint that "emergency surgery to repair [her] gastric perforation" was not performed while she was at All Saints (*See,* Plaintiff's Original Complaint, page 8, paragraph 4.9). EMTALA, however, does not require All Saints to provide this definitive treatment of her condition. *See, id.*

For these reasons, Plaintiff's only possible stabilization cause of action against All Saints must involve her April 30, 2012 transfer from All Saints to Forest Park Medical Center.

### c. Stabilization In Connection With/During Transfer to Forest Park Medical Center:

Under EMTALA, a patient is "stable" for transfer "if no material deterioration of the patient's emergency medical condition is likely to result within reasonable medical probability as a result of the transfer." *Nieves v. Hospital Metropolitano,* 998 F.Supp. 127, 133 (D.P.R. 1998). If a patient is not stable, the patient may still be transferred, but EMTALA requires certain documentation showing the patient consented to the transfer and/or that the patients' physician(s) felt the benefits of the transfer outweighed the risks of the transfer. *See, e.g., Ramos-Cruz v. Centro Medico Del Turabo,* 2009 U.S. Dist. LEXIS 119430 *17-18 (D.P.R. December 23, 2009); *Deron v. Wilkins,* 879 F.Supp. 603, 607-08 (S.D. Miss. 1995).

Assuming Plaintiff's EMTALA stabilization cause of action is based on her April 30, 2012 transfer from All Saints to Forest Park Medical Center, the Court should note that there is not a single fact in Plaintiff's complaint that either supports an inference beyond the mere possibility misconduct occurred in connection with her transfer and/or that All Saints is liable for the improper transfer of a patient.  Absent from the complaint are any facts showing that Plaintiff was unstable when she was transferred from All Saints and (assuming she was unstable) that All Saints did not comply with EMTALA in connection with the transfer of an unstable patient.  Again and further, since Plaintiff omitted any mention of or reference to the pivotal facts needed to support this cause of action, the Court "is justified in assuming the nonexistence of [any] such facts." *Ledesma,* 818 F.Supp. at 984.  As such, Plaintiff has failed to state stabilization-based transfer cause of action against All Saints.

### d. Conclusion:

As outlined by the above, All Saints is entitled to dismissal of Plaintiff's stabilization cause of action.  First, EMTALA does not apply to this cause of action to the extent it is based on All Saints' alleged failure to stabilize Plaintiff while she was a patient at All Saints following her medical screening evaluation on April 29, 2012.  Second, even if EMTALA does apply to this aspect of Plaintiff's care, the EMTALA duty to stabilize does not require definitive surgical treatment of her condition, as Plaintiff alleges should have occurred in her complaint.  Third, Plaintiff's complaint provides no facts whatsoever to support a claim that she was either (a) unstable under EMTALA at the time of her transfer from All Saints and/or (b) that her transfer from All Saints was an improper transfer of an unstable patient under EMTALA.

In connection with her EMTALA stabilization cause of action against All Saints, at the very least Plaintiff had to provide in her complaint some factual allegations as to what treatment All Saints was required to provide under EMTALA, but failed to provide.  *See, Brown,* 2010 U.S. Dist. LEXIS 116792 at \*13.  Further, Plaintiff needed to provide some facts showing that she was (a) not stable when she was transferred to Forest Park and/or (b) that her transfer to Forest Park was not an appropriate transfer of an unstable patient under EMTALA.

Plaintiff's wholesale omission of these pivotal facts prevents Plaintiff's complaint from stating a claim upon which relief can be granted.  Because Plaintiff omitted this pivotal information her complaint, the Court is also entitled to assume such supporting facts do not exist.  *See, Ledesma*, 818 F.Supp. at 984.  Accordingly, All Saints is entitled to dismissal of Plaintiff's EMTALA stabilization cause of action against it under Rule 12(b)(6).

### 3.   Plaintiff's Failure to Timely Transfer EMTALA Cause of Action:

The only "causes of action" created by EMTALA are causes of action for (1) failure to provide a medical screening examination, (2) failure to stabilize before transfer, and (3) failure to properly transfer an unstable patient.  42 U.S.C., §1395dd.  *See also, Baker v. Adventist Health, Inc.,* 260 F.3d 987, 992 (9th Cir. 2001); *Baber,* 977 F.2d at 883.  EMTALA does not require or impose a standard of care on hospitals like All Saints that patients must be transferred within a certain timeframe.  *See, Fraticelli-Torres v. Hospital Hermanos,* 300 Fed. App'x 1, 6 (1st Cir. 2008).

In *Fraticelli-Torres,* the United States Court of Appeals for the First Circuit stated "A hospital's negligent medical decision not to transfer a critical patient promptly to another hospital to receive necessary treatment might trigger state-law medical malpractice liability, but it could not constitute an EMTALA … violation."  *Id.* at 6.  The First Circuit went on to state "EMTALA merely restricts the conditions under which a hospital may transfer an unstabilized critical patient."  *Id.*

For this reason, All Saints is entitled to dismissal of Plaintiff's EMTALA cause of action that she was not transferred to Forest Park Medical Center until April 30, 2010 under Rule 12(b)(6).

### 4.   No Personal Harm Facts Based On Any EMTALA Violation By All Saints:

EMTALA is also limited in scope in that it only creates a private right of action against hospitals that have injured patients because they have violated EMTALA.   42 U.S.C., §1395dd(d)(2)(A).   *See also, Root,* 68 F.Supp.2d at 1088.   Plaintiff's complaint, however, contains no facts that show she suffered any injury as a result of All Saints' alleged violations of EMTALA.

Plaintiff's Statement of Facts is provided on pages 6-8 (paragraphs 4.1-4.11) of her complaint. Within these three pages of her complaint, the "facts" alleged regarding how Plaintiff was injured as a result of All Saints' alleged EMTALA violations are limited to the following two statements:

> 4.10    Beth MacNeill's medical condition deteriorated while she waited to be transferred to Forest Park Medical Center.

> 4.11    The fundo plication surgery and the delay in the surgical repair of the gastric perforation caused or contributed to cause injuries and damages to Beth MacNeill.
> (Plaintiff's Original Complaint, page 8, paragraphs 4.10-4.11).

At best, these statements are "conclusory allegations." As such, these statements are disregarded in consideration of All Saints' Rule 12(b)(6) motion to dismiss. *See, Cherry*, 2011 U.S. Dist. LEXIS 89241 at *10.

There are no facts in Plaintiff's complaint that support the conclusory allegation her "medical condition deteriorated" while efforts were being made to transfer her back under the care of her treating surgeon Dr. Jayaseelan at Forest Park Medical Center. There are also no facts in the complaint supporting Plaintiff's conclusory allegation that some violation of EMTALA was the cause of or contributed to "the delay in the surgical repair of her gastric perforation," as well as the conclusory allegation that she suffered "injuries and damages" because of the delay in repair of her gastric perforation. The wholesale omission of these facts by Plaintiff provides another reason All Saints is entitled to dismissal of Plaintiff's EMTALA claims against it under Rule 12(b)(6).

### C. Plaintiff's Ostensible Agent Claims Against All Saints:

In Paragraph 12.2 of Plaintiff's Original Complaint, Plaintiff alleges that Dr. Tan, Dr. Carlton and the EmCare, Inc. healthcare providers were ostensible agents of All Saints acting

within the scope of their authority with All Saints when they provided care and treatment to Plaintiff at All Saints on April 29-30, 2010 (Plaintiff's Original Complaint, page 13, paragraph 12.2).  Plaintiff alleges that for this reason All Saints is vicariously liable for Dr. Tan, Dr. Carlton and EmCare's alleged misconduct.  (*See, id.).*  All Saints is entitled to dismissal of this cause of action because Plaintiff's complaint fails to state a claim upon which relief can be granted.

Under Texas law, All Saints can only be liable under ostensible agency for the acts of staff physicians and healthcare providers if through its own affirmative action All Saints held out these individuals as its agents or employees, or knowingly allowed these individuals to hold themselves out as All Saints' employees.  *See, Baptist Memorial Hospital v. Sampson,* 969 S.W.2d 945, 948-950 (Tex. 1998); *Kimbrell v. Memorial Hermann Hospital System,* 407 S.W.3d 871, 876-77 (Tex. App.—Houston [14[th] Dist.] 2013, no pet.).  The mere fact that All Saints' staffs its emergency room with independent contractor physicians and opens its emergency room doors for business is not sufficient to establish ostensible agency.  *See, Sampson,* 969 S.W.3d at 948-950.  *See also, Kimbrell,* 407 S.W.3d at 877.

There are only two potential "facts" in Plaintiff's complaint to support her ostensible agency claim against All Saints.  One, in the Ostensible Agent section of her complaint Plaintiff states "Baylor All Saints Medical Center Fort Worth held itself out and represented that it provided emergency medical services and the Plaintiff relied on Baylor All Saints Medical Center Fort Worth's representation" (Plaintiff's Original Complaint, page 13, paragraph 12.2).  Two, in the Statement of Facts section of her complaint Plaintiff states "On April 29, 2012, [she] presented to Baylor All Saints Medical Center at Fort Worth Emergency Department via

ambulance in septic shock.   A request was made on [Plaintiff's] behalf for examination and treatment" (Plaintiff's Original Complaint, page 7, paragraph 4.4).

Based on the facts alleged, Plaintiff has failed to state an ostensible agency cause of action upon which relief can be granted.   First, as set forth above, an ostensible agency cause of action requires some affirmative act by All Saints that caused Plaintiff to believe Dr. Tan, Dr. Carlton and the EmCare, Inc. healthcare providers were its employees.   *See, Sampson,* 969 S.W.2d at 948; *Kimbrell,* 407 S.W.3d at 877.   In this respect, Plaintiff's complaint only contains the conclusory allegation that All Saints "held itself out and represented that it provided emergency medical services…" (Plaintiff's Original Complaint, page 13, paragraph 12.2). Plaintiff provides no facts that would allow the Court to infer that All Saints in some manner affirmatively held out Dr. Tan, Dr. Carlton and the EmCare, Inc. healthcare providers as its employees.   Further, under *Sampson*, even if this conclusory allegation is correct, it is not sufficient to establish or support an ostensible agency cause of action.   *See, Sampson,* 969 S.W.2d at 948.

Second, the facts in Plaintiff's complaint show that she did not present to All Saints on April 29, 2012 because of or due to any representation by All Saints that it employed Dr. Tan, Dr. Carlton or the EmCare healthcare providers.   This is another element of an ostensible agency cause of action under Texas law.   *See, id.*   Based on the factual allegations in Plaintiff's complaint, the reason she went to All Saints on April 29, 2012 is because that is where the ambulance took her (*See,* Plaintiff's Original Complaint, page 7, paragraph 4.4).   In fact, Plaintiff was apparently indisposed that day, since her complaint states that on arrival to All Saints "A request was made on [her] behalf for examination and evaluation" (Plaintiff's Original Complaint, page 7, paragraph 4.4).   For these reasons, All Saints is entitled to dismissal of

Plaintiff's ostensible agency cause of action against it under Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE.

## IV.

## CONCLUSION

The following statement by the United States District Court for the District of Massachusetts in *Bryson v. Milford Regional Medical Center,* 2014 U.S. Dist. LEXIS 40945 (D. Mass. March 27, 2014) is pertinent and relevant to consideration of All Saints' Rule 12(b)(6) Motion to Dismiss:

> EMTALA was intended to protect patients from a hospital's refusal to treat them or a transfer without stabilization.  But here, when Plaintiff was treated, admitted as an inpatient or for observation, given a bed and monitored until it was determined that she should be admitted then transferred for better care, Plaintiff was not "dumped" within the meaning of the Act.  Any challenges to the standard of care are claims of negligence or malpractice, not a violation of EMTALA.

*Bryson,* 2014 U.S. Dist. LEXIS 40945 at *19-20.   While *Bryson* is an EMTALA summary judgment case, the thoughts expressed by the district court ring true when the facts alleged by Plaintiff are considered here.  This is not an EMTALA case.  Plaintiff was screened, received numerous tests, was evaluated and cared for by at least three physicians, and was kept at All Saints until she could be transferred back under the care of her treating surgeon for definitive treatment.  In no way was Plaintiff "dumped" under EMTALA.

Plaintiff alleges EMTALA violations against All Saints related to (1) an inadequate medical screening examination on April 29, 2012, (2) a failure to stabilize Plaintiff's condition while at All Saints on April 29-30, 2012, and (3) a delay in transferring Plaintiff to Forest Park Medical Center until April 30, 2012.  All Saints has shown that Plaintiff has failed to state a claim upon which relief can be granted with respect to each one of these alleged EMTALA violations.

Plaintiff has failed to state a medical screening examination cause of action because the facts alleged show the medical screening examination Plaintiff was provided at All Saints discovered her emergency medical condition.  For this reason, All Saints is entitled to dismissal of this EMTALA cause of action against it.

Plaintiff has failed to state a stabilization claim against All Saints because she bases this complaint on the fact that her condition was not definitively treated with surgery while she was at All Saints.   Under EMTALA, "stabilization" does not require definitive treatment of the emergency medical condition at issue.  "Stabilization" focuses on when the patient is transferred from one facility to another and means that the patient's condition upon transfer is such that a "material deterioration" of her condition is not anticipated during transfer.   Regarding her transfer from All Saints, Plaintiff alleges no facts that would support an inference that her condition was expected to materially deteriorate during her transfer from All Saints to Forest Park, and/or that her condition did materially deteriorate during this transfer.   Further, Plaintiff provides no facts showing that even if she was unstable at the time of transfer, that such transfer violated EMTALA.  As such, All Saints is entitled to dismissal of this EMTALA cause of action against it.

Plaintiff's delay in transfer cause of action is not actionable under EMTALA.  The only claims created by EMTALA are claims based on medical screening examinations and stabilization in connection with patient discharge or transfer.  Thus, All Saints is entitled to dismissal of this EMTALA-based cause of action.

Finally, with respect to Plaintiff's EMTALA causes of action, All Saints is entitled to dismissal of those claims because Plaintiff's complaint does not allege any facts to support the

requirement that she suffered some kind of injury due to All Saints' alleged violations of EMTALA.

All Saints is also entitled to dismissal of Plaintiff's cause of action that it is liable for the acts of Dr. Tan, Dr. Carlton and/or the EmCare healthcare providers under ostensible agency. All Saints is entitled to dismissal of this cause of action because there are no facts in Plaintiff's complaint showing (1) All Saints made some affirmative representation that these physicians and healthcare providers were its employees and/or (2) that Plaintiff's reliance on this affirmative representation by All Saints was the reason she went to All Saints on April 29, 2012.

The fact of the matter is that Plaintiff's Original Complaint does not provide the Court any factual basis from which it can reasonably infer (a) that All Saints is liable for the misconduct alleged and/or (b) anything beyond the mere possibility All Saints committed the misconduct alleged.  Because Plaintiff's Original Complaint omits these necessary facts, All Saints is entitled to dismissal of Plaintiff's complaint under Rule 12(b)(6).  *See, Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555, 570.  *See also, Ledesma,* 818 F.Supp. at 984.

**WHEREFORE, PREMISES CONSIDERED**, Baylor All Saints Medical Center at Fort Worth respectfully requests that its Rule 12(b)(6) Motion to Dismiss be granted, that Plaintiff's claims and causes of action against Baylor All Saints Medical Center at Fort Worth be dismissed and that Baylor All Saints Medical Center at Fort Worth be granted such other and further relief to which it may show itself justly entitled to receive.

Respectfully Submitted,

**THIEBAUD REMINGTON THORNTON BAILEY, LLP**

By: /s/Russell G. Thornton

    **RUSSELL G. THORNTON**
    State Bar Card No. 19982850
    **rthornton@trtblaw.com**

    4800 Fountain Place
    1445 Ross Avenue
    Dallas, Texas  75202
    (214) 954-2200
    (214) 754-0999 (Fax)

    **ATTORNEYS FOR DEFENDANT**
    **BAYLOR ALL SAINTS MEDICAL CENTER**
    **AT FORT WORTH**

## CERTIFICATE OF SERVICE

        I hereby certify that on May 2, 2014, I served each of the following counsel with a copy of the motion electronically through the Court's ECF system:

    Mr. Robert Hammer
    HAMMER & ASSOCIATES
    675 N. Henderson Street, Suite 300
    Fort Worth, Texas  76107
    Robert@rhammerlaw.com

    Mr. Michael J. Henry
    Attorney at Law, P.C.
    675 N. Henderson Street, Suite 300
    Fort Worth, Texas  76107
    henry@henrytexlaw.com

    /s/Russell G. Thornton
    **RUSSELL G. THORNTON**