**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BETH CHANEY MACNEILL** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4-14CV-242-0** |
| **NIRMAL JAYASEELAN, M.D., DOMINGO** | § | |
| **K. TAN, M.D., CHAD CARLTON, M.D.,** | § | |
| **TEXAS HEALTH HARRIS METHODIST** | § | |
| **HOSPITAL FORT WORTH, EMERGENCY** | § | |
| **MEDICINE CONSULTANTS LTD.,** | § | |
| **BAYLOR ALL SAINTS MEDICAL CENTER** | § | |
| **AT FORT WORTH AND EMCARE, INC.** | | |
| *Defendants* | | |

**<u>PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS AND MOTION TO COMPEL
DISCOVERY FROM TEXAS HEALTH HARRIS METHODIST HOSPITAL FORT
WORTH AND BRIEF IN SUPPORT THEREOF</u>**

**Robert W. Hammer**
State Bar No. 08854780
675 North Henderson, Suite 300
Fort Worth, Texas 76107
Robert@rhammerlaw.com
Telephone 817/ 332-8266
Telefax    817/ 332-8708

**Michael J. Henry**
State Bar No. 09482300
675 North Henderson, Suite 300
Fort Worth, Texas 76107
henry@henrytexlaw.com
Telephone 817/ 877-3303
Telefax    817/ 338-9109

**ATTORNEYS FOR PLAINTIFF**

# Table of Contents

Table of Authorities  iii

I. Introduction 1

II. Relevant Procedural Background 2

III. Plaintiff's Motion to Overrule Objections and Motion to Compel Discovery from Texas Health Harris Methodist Hospital Fort Worth 3

 A. *Tex. Civ. Prac. & Rem. Code § 74.351* 3

  1. *Section 74.351* is procedural and therefore *Fed. R. Civ. P. 26* and *37* apply. 4

  2. Assuming arguendo that *§74.351* is substantive, there is a direct collision between it and *Fed. R. Civ. P. 26* and *37* and therefore *§74.351* is preempted and the Federal Rules apply. 5

  3. *Section 74.351* directly collides with *Fed. R. Civ. P. 26* because it prohibits discovery prior to the submission of the expert reports. 7

  4. *Section 74.351* directly collides with *Fed. R. Civ. P. 26(a)(2)(D)* because it removes the federal court's "scheduling" discretion. 8

  5. *Section 74.351* directly collides with *Fed. R. Civ. P. 37(c)(1)* because it removes the federal court's "dismissal" discretion. 8

  6. Conclusion 9

 B. Plaintiff's Requests for Production are not overly broad, unduly burdensome, or completely privileged. 9

  1. Plaintiff's Requests for Production are not overly broad, unduly burdensome, or completely privileged because EMTALA required Defendant Harris to provide Plaintiff with an appropriate medical screening. 10

  2. Plaintiff will agree to a reasonable protective order. 12

  3. Plaintiff's requests are not overly broad or unduly burdensome. 12

  4. Conclusion 16

IV. Prayer 16

## Table of Authorities

**U.S. Supreme Court**

*Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4-5, 7 (1987). ........................................................... 3

*Erie R.R. v. Tompkins,* 304 U.S. 64 (1938) ................................................................................... 3

*Gasperini v. Ctr. for Humanities*, 518 U.S. at 415, 427 n.7 (1996) ................................................ 5

*Hickman v. Taylor*, 329 U.S. 495, 506-07 (1947) ......................................................................... 13

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978) ..................................................... 13

*Steward Org., Inc. v. Ricoh*, 487 U.S. 22, 27 n.4 (1988) ............................................................... 5

*Walker v. Armco Steel Corp.,* 446 U.S. 740, 750 n.9 (1980) ......................................................... 5

**Circuit Courts**

*Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir. 1995) ............................................................ 3

*Ashland Chemical Inc. v. Barco Inc.,* 123 F.3d 261, 264 (5th Cir. 1997). ..................................... 4

*Baber v. Hospital Corp. of America*, 977 F.2d 872at 879 (4th Cir. 1992) .................................... 10

*Battle ex rel. Battle v. Memorial Hospital at Gulfort*,228 F.3d 544, 558 (5th Cir. 2000) ...... 10, 11

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973) .............................................. 13

*Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir. 1991). ................................................................ 13

Crosby v. La. Health Serv. & Indem. Co., 647 F.3d 258, 264 (5th Cir. 2011)...................... 12, 14

*Guzman v. Mem'l Hermann Hosp. Sys.*, 409 Fed. Appx. 769 at *773 (5th Cir. 2011). .......... 10, 11

*Hall v. GE Plastic Pacific PTE Ltd.,* 327 F.3d 391, 394 (5th Cir. 2003) ....................................... 3

**Texas Court of Appeals**

*Broom v. MacMaster, M.D.,* 992 S.W.2d 659, 662 (Tex. App.--Dallas 1999, no pet.)       4

**U.S. District Court**

*Baker v. Bowles,* No. 3:05-CV-1118-L, 2005 U.S. Dist. LEXIS 32942, at *36-38 (N.D. Tex. Dec.

14, 2005) ............................................................................................................... 6

*Boone v. Knight,* 131 F.R.D. 609, 611 (S.D. Ga. 1990). .............................................................. 3

*Brown v. Brooks,* No. C-04-329, 2005 U.S. Dist. LEXIS 38522 (S.D. Tex. June 23, 2005) ..... 6, 7

*Cruz v. Chang,* 400 F.Supp. 2d 906 (W.D. Tex. 2005). ............................................................ 5, 7

*Garcia v. LCS Corr. Servs., Inc.,* No. C-09-334, 2010 U.S. Dist. LEXIS 50767, at *15 (S.D. Tex.

May 24, 2010) ....................................................................................................... 6

*Garza v. Scott & White Mem. Hosp.,* 234 F.R.D. 617, 623 (W.D. Tex. 2005) .......................... 6, 7

*Guzman v. Mem'l Hermann Hosp. Sys.*, No. H-07-3973, 2008 U.S. Dist. LEXIS 101781 (S.D.

Tex. December 17, 2008) ...................................................................................... 6

*Hall v. Trisun,* No. SA-05-CA-984-OG, 2006 U.S. Dist. LEXIS 59005, at *1 (W.D. Tex. Aug. 1,

2006) .................................................................................................................. 4, 5

*Nelson v. Myrick,* No. 3:04-CV-0828-G, 2005 U.S. Dist. LEXIS 5059 (N.D. Tex. Mar. 29, 2005)

.............................................................................................................................. 6

*Nelson v. Myrick*, No. Civ. A.3:04-CV-0828-G, 2005 U.S. Dist. LEXIS 5059 at *3 n.2. ............ 8

*Poindexter v. Bonsukan*, 145 F.Supp.2d 800, 809 (E.D. Tex. 2001) ......................... 4, 5, 6, 7, 8, 9

*Sauceda v. Pfizer, Inc.,* No. C-07-06, 2007 U.S. Dist. LEXIS 1600, at *5-7 (S.D. Tex. Jan. 9,

2007) ...................................................................................................................... 5

*Southard v. United Reg'l Health Care Systems, Inc.*, 245 F.R.D. 257, 259-60 (N.D. Tex. 2007).

.................................................................................................................... 10, 11

*Southern Filter Media, LLC v. Halter,* 2014 U.S. Dist. LEXIS 120837(M.D. La.Aug. 29, 2014).

........................................................................................................................ 14

*Toler v. Sunrise Senior Living Servs.,* No. SA-06-CV-0887-XR, 2007 U.S. Dist. LEXIS 23720,

at *12 (W.D. Tex. Mar. 21, 2007) ....................................................................... 4, 5

*United States ex rel. Stewart v. La. Clinic*, NO. 99-1767 SECTION "N" (3), 2003 U.S. Dist.

LEXIS 9401(E.D. La. June 4, 2003)........................................................................ 14

*Veam v. Nexion Health Mgmt., Inc.,* No. 206 CV 231, 2006 U.S. Dist. LEXIS 71732 (E.D. Tex.

Oct. 2, 2006) .......................................................................................................... 5

*Wakat v. Montgomery County,* No. H-05-0978, 2006 U.S. Dist. LEXIS 33546 (S.D. Tex. May

23, 2006) ................................................................................................................ 5

**United States Code**

42 U.S.C. § 1395dd(a) .................................................................................................. 10

**Texas Health and Safety Code**

Texas Health and Safety Code § 241.153.................................................................... 12

**Federal Rules**

*Fed. R. Civ. P. 26* ........................................................................... 3, 5, 7, 8, 9, 12, 13, 14

*Fed. R. Civ. P. 30(a)(2)(c)* ........................................................................................... 7

*Fed. R. Civ. P. 31(a)(2)(c)* ........................................................................................... 7

*Fed. R. Civ. P. 33(a)* .................................................................................................... 7

*Fed. R. Civ. P. 34(a)* .................................................................................................... 7

*Fed. R. Civ. P. 37* ............................................................................................. 3, 5, 7, 8

**Texas Civil Practice & Remedies Code**

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2013) ............................. 2, 3, 4, 5, 6, 7, 8, 9

*Tex. Rev. Civ. Stat. Ann. art. 4590i §13.01* (Vernon 2002) ......................................................... 6, 7

**Appendices**

App. 1.................................................................................................................................. 2, 9, 15

App. 2.................................................................................................................................. 2, 3, 14

App. 3....................................................................................................................................... 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BETH CHANEY MACNEILL** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4-14CV-242-0** |
| **NIRMAL JAYASEELAN, M.D., DOMINGO** | § | |
| **K. TAN, M.D., CHAD CARLTON, M.D.,** | § | |
| **TEXAS HEALTH HARRIS METHODIST** | § | |
| **HOSPITAL FORT WORTH, EMERGENCY** | § | |
| **MEDICINE CONSULTANTS LTD.,** | § | |
| **BAYLOR ALL SAINTS MEDICAL CENTER** | § | |
| **AT FORT WORTH AND EMCARE, INC.** | | |
| *Defendants* | | |

**PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS AND MOTION TO
COMPEL DISCOVERY FROM TEXAS HEALTH HARRIS METHODIST
HOSPITAL FORT WORTH AND BRIEF IN SUPPORT THEREOF**

**TO THE HONORABLE DISTRICT JUDGE REED O'CONNOR:**

**NOW COMES PLAINTIFF, BETH CHANEY MACNEILL** and files this Motion to

Overrule Objections and Motion to Compel Discovery from Texas Health Harris Methodist

Hospital Fort Worth and Brief in Support thereof, and would respectfully show this Court the

following:

**I.    Introduction**

This is an EMTALA claim against Texas Health Harris Methodist Hospital Fort Worth

(hereinafter referred to as Harris).  On April 27, 2012, Defendant Nirmal Jayaseelan, M.D.

performed an outpatient gastric fundo plication for GERD on Beth MacNeill. Less than 24 hours

later, Ms. MacNeill developed severe abdominal pain and presented to the Harris Emergency

Department. Harris failed to provide an appropriate medical screening examination within the

capability of the hospital's emergency department and its ancillary services and as a consequence

failed to determine that Ms. MacNeill had a gastric perforation. Even though gastric perforation

is an emergency medical condition, Harris discharged her home.  Harris' failure to provide Beth

MacNeill an appropriate medical screening examination, and the follow-up care that would have

been provided had an appropriate medical screening examination been performed, caused Beth

MacNeill's medical condition to deteriorate resulting in gross peritonitis, septic shock, acute

renal failure and acute respiratory failure.

## II.      Relevant Procedural Background

On April 8, 2014, Plaintiff filed her Original Complaint asserting that, *inter alia*,

Defendant Texas Health Harris Methodist Hospital Fort Worth failed to provide Plaintiff an

appropriate medical screening examination resulting in the discharge of Ms. MacNeill from

Harris' Emergency Department with an unstable emergency medical condition.  Defendant Harris

filed its original answer on May 2, 2014.  Plaintiff served her Requests for Production to

Defendant Harris on August 6, 2014. *See* App. 1.  The Plaintiff's requests seek to discover,

among other things, the medical screening examinations provided by Harris to other Emergency

Department patients with symptoms similar to Beth MacNeill. Defendant Harris served

Objections and Responses to Plaintiff's Requests for Production on September 5, 2014. *See* App.

2.  Defendant Harris objected to Plaintiff's Requests on the basis that state procedural statute

*§74.351* prohibits discovery prior to production of an expert report and that Plaintiff's requests

are overly broad, burdensome, and privileged.

Good cause exists to overrule Defendant Harris' objections and to compel Defendant

Harris to produce documents in response to Plaintiff's Requests for Production.

### III.   Plaintiff's Motion to Overrule Objections and Motion to Compel Discovery from Texas Health Harris Methodist Hospital Fort Worth

#### A.  *Tex. Civ. Prac. & Rem. Code § 74.351*

Defendant Harris asserts that Plaintiff's Requests for Production are "premature pursuant to *Section 74.351* of the Texas Civil Practice and Remedies Code". On that basis, Harris refuses to produce any documents requested in Plaintiff's Requests for Production. *See* App. 2.  Plaintiff asserts that Texas Civil Practice and Remedies Code *§ 74.351* is either procedural, and therefore not controlling, or substantive and therefore preempted by *Fed. R. Civ. Proc. 26* and *37*.  It is Plaintiff's position that discovery and its timing are controlled by the *Federal Rules of Civil Procedure* and this Court's Scheduling Order and Plaintiff's expert reports are not due until December 15, 2014.

Under the *Erie* doctrine, when a plaintiff asserts a state law claim in federal court, the Court looks to federal law in determining the procedural law to be applied in the action, and looks to state law in determining the substantive law that governs the claim.  *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938);  *See Hall v. GE Plastic Pacific PTE Ltd.,* 327 F.3d 391, 394 (5th Cir. 2003).  The Supreme Court has made clear that *Erie* and its progeny do not require the federal court to depart from the Federal Rules in cases where those rules conflict with state law, even if state law is in some sense "substantive." *Id.; See Boone v. Knight,* 131 F.R.D. 609, 611 (S.D. Ga. 1990).  The substantive nature of a state rule is irrelevant if the federal rule "occupies [the state rule's] field of operation." *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4-5, 7 (1987). "If the [federal] rule speaks to the point in dispute and is valid, it is controlling, and no regard need be paid to contrary state provisions." *Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir. 1995).

In considering whether *Tex. Civ. Prac. & Rem. §74.351* or *Fed. R. Civ. P. 26* and *37*

applies, the court must determine whether *§74.351* is procedural or substantive.  If *§74.351* is

procedural then the Federal Rules apply.  If *§74.351* is substantive the Court must determine

whether there is a direct collision between the State and Federal Rules.  If there is a direct

collision then the State rule is preempted and the Federal Rules apply.

      **1.**      **Section 74.351 is procedural and therefore *Fed. R. Civ. P. 26* and *37* apply.**

*Section 74.351* is a procedural rule and does not apply in federal proceedings. *See*

*Poindexter v. Bonsukan*, 145 F.Supp.2d 800, 809 (E.D. Tex. 2001); *Toler v. Sunrise Senior*

*Living Servs.,* No. SA-06-CV-0887-XR, 2007 U.S. Dist. LEXIS 23720, at *12 (W.D. Tex. Mar.

21, 2007); *Hall v. Trisun,* No. SA-05-CA-984-OG, 2006 U.S. Dist. LEXIS 59005, at *1 (W.D.

Tex. Aug. 1, 2006). Texas courts consider *section 74.351* to provide procedural, not substantive,

rules.  *See Broom v. MacMaster, M.D.,* 992 S.W.2d 659, 662 (Tex. App.--Dallas 1999, no pet.)

("section [74.351] generally establishes procedural provisions to be applied in a lawsuit").  The

fact that the Texas legislature chose to title *section 74.351* "Procedural Provisions" suggests its

understanding that the provisions were procedural. *Id.*  Because the goal of section 74.351's

sanctions is to penalize "frivolous" malpractice suits, it is similar to rules or laws that sanction

bad-faith conduct. *See Poindexter,* 145 F.Supp.2d at 809.  Those rules are generally deemed

procedural and are not applied by a federal court sitting in diversity. *See Ashland Chemical Inc.*

*v. Barco Inc.,* 123 F.3d 261, 264 (5th Cir. 1997).  Moreover, *section 74.351* does not diminish or

enlarge what a plaintiff must substantively prove in a medical malpractice case. *Poindexter,* 145

F.Supp.2d at 809.  It is thus properly considered procedural because it regulates "the judicial

process for enforcing rights and duties recognized by substantive law and for justly

administering remedy and redress for disregard or infraction of them." *Id.* at 809-10.

**2.      Assuming arguendo that *§74.351* is substantive, there is a direct collision between it and *Fed. R. Civ. P. 26* and *37* and therefore *§74.351* is preempted and the Federal Rules apply.**

In determining whether a conflict exists, the Supreme Court has explained that the "direct collision" language "expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." *Steward Org., Inc. v. Ricoh*, 487 U.S. 22, 27 n.4 (1988).  Federal courts are to "interpret[] the Federal Rules with sensitivity to important state interests and regulatory policies." *Gasperini v. Ctr. for Humanities*, 518 U.S. at 415, 427 n.7 (1996). Although federal courts are not to give the Rules "[a] broad reading that would create significant disuniformity between state and federal courts," *Stewart Org.*, 487 U.S. at 37-38 (Scalia, J. Dissenting), the federal rules are not "to be narrowly construed in order to avoid a 'direct collision' with state law.  The . . . Rules should be given their plain meaning." *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750 n.9 (1980).

If there is a direct collision between *§ 74.351* and *Rule 26* and *37,* the federal rules preempt the state rules. Every federal district court within Texas to consider whether the *new* §74.351 applies in federal court has held that it does not.[1] *See, e.g. Poindexter v. Bonsukan*, 145 F.Supp.2d 800 (E.D. Tex. 2001); *Toler v. Sunrise Senior Living Servs.,* No. SA-06-CV-0887-XR, 2007 U.S. Dist. LEXIS 23720, at *12 (W.D. Tex. Mar. 21, 2007); *Sauceda v. Pfizer, Inc.,* No. C-07-06, 2007 U.S. Dist. LEXIS 1600, at *5-7 (S.D. Tex. Jan. 9, 2007); *Veam v. Nexion Health Mgmt., Inc.,* No. 206 CV 231, 2006 U.S. Dist. LEXIS 71732 (E.D. Tex. Oct. 2, 2006); *Hall v. Trisun,* No. SA-05-CA-984-OG, 2006 U.S. Dist. LEXIS 59005, at *1 (W.D. Tex. Aug. 1, 2006); *Wakat v. Montgomery County,* No. H-05-0978, 2006 U.S. Dist. LEXIS 33546 (S.D. Tex. May 23, 2006); *Baker v. Bowles,* No. 3:05-CV-1118-L, 2005 U.S. Dist. LEXIS 32942, at *36-38

---

[1] *Cruz v. Chang*, 400 F.Supp. 2d 906 (W.D. Tex. 2005), the only Federal case to hold that the state 120 day expert report requirements apply,  considered the predecessor statute to Tex. Civ. Prac. & Rem. §74.351, *§13.01 of Tex. Rev. Civ. Stat. Ann. art. 4590i* (Vernon 2002).

(N.D. Tex. Dec. 14, 2005); *Garza v. Scott & White Mem. Hosp.,* 234 F.R.D. 617, 623 (W.D. Tex. 2005); *Brown v. Brooks,* No. C-04-329, 2005 U.S. Dist. LEXIS 38522 (S.D. Tex. June 23, 2005); *Nelson v. Myrick,* No. 3:04-CV-0828-G, 2005 U.S. Dist. LEXIS 5059 (N.D. Tex. Mar. 29, 2005); *Guzman v. Mem'l Hermann Hosp. Sys.*, No. H-07-3973, 2008 U.S. Dist. LEXIS 101781 (S.D. Tex. December 17, 2008); *Garcia v. LCS Corr. Servs., Inc.,* No. C-09-334, 2010 U.S. Dist. LEXIS 50767, at *15 (S.D. Tex. May 24, 2010) ("Upon review of the relevant case law, this court cannot overlook that the vast majority of district courts have held that the expert report requirement does not apply in federal court."). *Poindexter v. Bonsukan* is the seminal federal court case.  In *Poindexter*, the Eastern District court found that the predecessor to *§ 74.351, §13.01 of Tex. Rev. Civ. Stat. Ann. art. 4590i* (Vernon 2002), was a procedural rule such that it did not apply in federal proceedings. 145 F. Supp. 2d 800, 810 (E.D. Tex. 2001).  The *Poindexter* court stated that the purposes of the federal and state provisions are sufficiently coextensive. *Poindexter,* 145 F.Supp.2d at 808.  Both seek to enable courts to penalize parties that file baseless suits. *Id.*  Whereas the federal rules adopt a case-by-case approach to discovery of experts and "to identifying and deterring frivolous appeals," *§ 74.351* precludes any exercise of discretion within its scope of operation. *See Id.*  The federal rules thus occupy the state statute's field of operation so as to preclude its application in federal diversity actions. *Id.* *Section 74.351's* mandatory approach, providing a trial court with little discretion, is permissible in state court where the federal rules do not apply.  *See Id.* But it cannot apply in federal court. *Id.* Concluding that the expert report requirement was a procedural rule, and if not, a substantive rule in conflict with federal law, the *Poindexter* court declined to apply it. *Id.*  The *Poindexter* Court further found that, even if *§ 13.01* was more of a substantive rule, its mandatory timing, report content and sanction provisions abrogated the discretion provided by *Federal Rules*

26(a)(2) and *37*, and cautioned that applying *§ 13.01* would "impinge on the broad procedural powers of the federal district courts to control discovery." *Brown,* 2005 U.S. Dist. LEXIS 38522 at *7 citing *Poindexter*, 145 F.Supp.2d at 808.

The Western District is the only Texas federal court to depart from the reasoning in *Poindexter* and even the Western District is divided. In *Cruz v. Chang*, Judge Kathleen Cardone opined that *§13.01* applied to federal medical malpractice claims because it was irrelevant to discovery. 400 F.Supp. 2d 906 (W.D. Tex. 2005). Later that same year, Western District Court Judge Sam Sparks held that the new *§74.351* directly collided with *Fed. R. Civ. P. 26* and *37* and did not apply to federal medical malpractice claims. *Garza v. Scott & White Mem. Hosp.,* 234 F.R.D. 617, 623 (W.D. Tex. 2005).

**3.      *Section 74.351* directly collides with *Fed. R. Civ. P. 26* because it prohibits discovery prior to the submission of the expert reports.**

*Federal Rule 26* requires a party to disclose the names and addresses of fact witnesses, etc., within 14 days of the parties *Rule 26(f)* conference. *Section 74.351(s)* mandates that all discovery in a health care liability claim is stayed until the claimant has served expert reports. This aspect of *§74.351* is in direct and unambiguous conflict with the federal rules, which plainly tie the beginning of discovery to the timing of the *Rule 26(f)* conference. *See Fed. R. Civ. P. 30(a)(2)(c), 31(a)(2)(c)* (depositions); *Fed. R. Civ. P. 33(a)* (interrogatories); *Fed. R. Civ. P. 34(a)* (requests for production). Clearly application of §74.351 would wipe out *Fed. R. Civ. P. 26, 30, 33,* and *34* and this cannot stand. *Poindexter,* 145 F.Supp.2d at 808.

Furthermore, *Federal Rule 26(b)(4)(B)-(C)* protects drafts of any expert report and communications between the parties attorney and the expert witness required under *Rule 26(a)(2)*. Tex. Civ. Prac. & Rem. §74.351 removes any restrictions regarding use of an initial

report if the plaintiff makes an affirmative use of the report. *Nelson v. Myrick*, No. Civ. A.3:04-CV-0828-G, 2005 U.S. Dist. LEXIS 5059 at *3 n.2.

**4.      *Section 74.351* directly collides with *Fed. R. Civ. P. 26(a)(2)(D)* because it removes the federal court's "scheduling" discretion.**

*Federal Rule 26* provides that expert report disclosures must be made "at the times and in the sequence *that the court orders*". *Fed. R. Civ. P. 26(a)(2)(D)* (emphasis added). By contrast, *§74.351* provides that expert reports shall be filed within 120 days of Defendant's original answer. *Tex. Civ. Prac. & Rem. § 74.351.* If a plaintiff fails to comply with this provision and the defendant files a motion seeking sanctions, a trial court has no discretion and must enter an order dismissing the case with prejudice. *See § 74.351(b).* Thus, the discretion provided in the federal rule is wiped out by the state rule and therefore cannot stand. *Poindexter,* 145 F.Supp.2d at 808.

**5.      *Section 74.351* directly collides with *Fed. R. Civ. P. 37(c)(1)*because it removes the federal court's "dismissal" discretion.**

*Federal Rule 37(c)(1)* gives a federal trial judge discretion to determine an appropriate sanction if a party fails to disclose or supplement.  Under *Fed. R. Civ. P. 37(c)(1)* a party who "fails to provide information or identify a witness . . . is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless". The Rule gives the federal judge the discretion to determine whether or not the failure was substantially justified or is harmless. *Fed. R. Civ. P. 37(c)(1).* Exercising its discretion, a federal judge may impose an appropriate sanction. *Id.* These sanctions may include dismissing the case against the disobedient party; ordering payment of reasonable expenses including attorneys fees;

informing the jury of the parties failure; and any other appropriate sanctions listed in Rule 37(b)(2)(A)(i)-(vi). *Id.  Federal Rule 26* places the discretion with the federal judge to determine the appropriate sanction. *Poindexter,* 145 F.Supp.2d  at 809.  This is contrary to the mandatory sanction of dismissal in the Texas rule *§ 74.351(b)(2).  Poindexter,*145 F.Supp.2d at 809. *Section 74.351(b)(2)* mandates that when a party fails to submit an expert report the court *shall* dismiss the claim with prejudice. The two cannot coexist and therefore the federal rule applies. *Poindexter,* 145 F.Supp.2d  at 809.

**6.      Conclusion**

Defendant Texas Health Harris Methodist Hospital Fort Worth has refused to produce requested documents on the basis that *Tex. Civ. Prac. & Rem. §74.351* prohibits discovery prior to Plaintiff's production of an expert report.  *Section 74.351* is a procedural law and therefore does not apply.  Even if *§74.351* is a substantive law, it directly collides with *Federal Rule 26* and this Court's Scheduling Order and therefore is preempted.

**B.  *Plaintiff's Requests for Production are not overly broad, unduly burdensome, or completely privileged.***

EMTALA requires that emergency room patients be provided an appropriate medical screening.  Plaintiff asserts that Defendant Harris failed to provide Plaintiff an appropriate medical screening and therefore violated EMTALA.  In an attempt to discover information relevant to the subject matter of appropriate medical screening, Plaintiff submitted Requests for Production and sought recent medical charts of patients who had symptoms similar to Beth Chaney MacNeill.  Specifically, Requests for Production No. 9 through 19 are designed to discover information concerning the existence of and standard screening procedures for patients with symptoms similar to Plaintiff Beth Chaney MacNeill.  *See* App. 1, pp. 4-6. Plaintiff's requests for these medical records are necessary to establish that Defendant Harris provided an

inappropriate screening.  The medical charts requested by Plaintiff are relevant and **crucial** for

the Plaintiff to make the appropriate comparison **mandated**  under EMTALA. *Southard v.*

*United Regional Health Care Systems, Inc.*, 245 F.R.D. 257, 259-60 (N.D. Tex. 2007).

> 1.    **Plaintiff's Requests for Production are not overly broad, unduly
> burdensome, or completely privileged because EMTALA required Defendant
> Harris to provide Plaintiff with an appropriate medical  screening.**

EMTALA required Harris to provide Beth Chaney MacNeill "an appropriate medical

screening examination within the capability of the hospital's emergency department, including

ancillary services routinely available to the emergency department, to determine whether or not

an emergency medical condition (within the meaning of subsection (e)(1) of this section)

exist[ed]." 42 U.S.C. § 1395dd(a) (parenthetical in original).  An inappropriate screening

examination is one that has a disparate impact on the Plaintiff.  *See Guzman v. Mem'l Hermann*

*Hosp. Sys.*, 409 Fed. Appx. 769 at *773 (5th Cir. 2011).  Courts construing EMTALA have

identified at least three criteria by which the appropriateness of a medical screening examination

can be judged:

> A patient can prove disparate impact **[1]** showing that the hospital
> did not follow its own standard screening procedures *or* **[2] by
> pointing to differences between the screening examination that
> the patient received and examinations that other patients with
> *similar* symptoms received at the same hospital.** [citation
> omitted] . . . . A patient can also prove an EMTALA violation by
> **[3]** showing that the hospital provided such a cursory screening
> that it amounted to no screening at all.

*Id.* (citing, *inter alia, Battle ex rel. Battle v. Mem'l Hosp. at Gulfport,* 228 F.3d 544, 557 (5th Cir.

2000) (brackets and emphasis added). "The plain language of the statute requires a hospital to

develop a screening procedure designed to identify such critical conditions that exist in

symptomatic patients and to apply that screening procedure uniformly to all patients with similar

complaints." *Baber v. Hospital Corp. of America*, 977 F.2d 872at 879 (4th Cir. 1992)(footnote omitted).  "[E]vidence that a hospital did not follow its own screening procedures can support a finding of EMTALA liability for disparate treatment." *Battle ex rel. Battle v. Memorial Hospital at Gulfort*,228 F.3d 544, 558 (5th Cir. 2000); *Guzman*, 409 Fed. Appx. at *773 ("A patient can prove disparate impact by showing that the hospital did not follow its own standard screening procedures. . ." citing *Battle,*228 F.3d at 558); *Southard v. United Reg'l Health Care Sys., Inc.,* No. 7:06-CV-11-L, 2008 WL 4489692, at *1 (N.D. Tex. Aug. 5, 2008)

Based on the plain language of EMTALA and the uniform holdings construing EMTALA's medical screening requirement to be, "an individualized standard," it is important to discover the medical screenings actually provided to other Harris patients with symptoms similar to those of Beth Chaney MacNeill.  The importance of this discovery is most aptly summarized by United States Magistrate Judge Roach in *Southard v. United Regional Health Care Systems, Inc.*:

> [U]nder EMTALA a hospital must provide "appropriate" medical screening.  Appropriateness is adjudged by whether the screening at issue "was performed equitably in comparison to other patients with similar symptoms" citing *Marshall v. E. Carroll Parish Hospital*, 134 F.3d 319, 322-24 (5th Cir. 1998). . . . Under the holdings of the Supreme Court, the Fifth Circuit and the Judges of the Northern District of Texas, "appropriateness" is measured by comparison to other patients and their symptoms. . . . I find that the documents requested by Plaintiffs in their [discovery requests] are relevant, indeed, **crucial**, for the Plaintiff to make the appropriate comparison **mandated**  under EMTALA.

245 F.R.D. 257, 260 (N.D. Tex. 2007) (emphasis added).

Plaintiff's requests for medical charts of patients with symptoms similar to Beth Chaney MacNeill is an attempt to establish whether Defendant Harris provided an adequate medical screening.  The only way Plaintiff can discover this information is to compare the screening that

Beth Chaney MacNeill received to the screening provided to other patients with similar symptoms.

**2.      Plaintiff will agree to a reasonable protective order.**

Defendant Harris objects to Plaintiff's Requests for Disclosure on the grounds of patient confidentiality.  Plaintiff acknowledges that under the Texas Health and Safety Code, other patients' medical information is protected by patient confidentiality.   However, under Texas Health and Safety Code § 241.153, "[a] patient's health care information may be disclosed without the patient's authorization if the disclosure is: **(19)** to comply with a court order . . ."[2]

**3.      Plaintiff's requests are not overly broad or unduly burdensome.**

Defendant asserts that Plaintiff's Requests for Production No. 9 through 19 are overly broad and unduly burdensome.  Plaintiff disagrees. Plaintiff's Requests for Production 9 through 19 are neither overly broad or unduly burdensome.  When considering whether a request is burdensome, the "district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).  The burden of the proposed discovery does not outweigh the likely benefit because of the necessity of the charts to establish a violation of EMTALA. Furthermore, Plaintiff's requests are not overly broad.  Plaintiff's requests seek the medical charts of other patients with similar medical conditions.  The Plaintiff does not merely seek patients with severe abdominal pain, but the requests are progressively limited in nature, each adding specific symptoms in order to narrow the scope of the requests.

---

[2] Plaintiff  will agree to a protective order with restrictions on the use of confidential patient information.

The scope of discovery in federal court is set forth in *Federal Rule of Civil Procedure 26(b)(1)* and provides in part as follows:

> (1) **Scope in General.**  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter *relevant to the subject matter* involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence . . . .

*Fed. R. Civ. P. 26(b)(1)* (emphasis added).  In other words, a party may discover any non-privileged information relevant to the subject matter of the lawsuit, or reasonably calculated to lead to the discovery of admissible evidence.  *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir. 1991).  "Relevant to the subject matter" is interpreted broadly.  Information is "relevant to the subject matter" if it might reasonably assist a party in evaluating a case, preparing for trial or facilitating settlement thereof.  *See Hickman v. Taylor*, 329 U.S. 495, 506-07 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into facts underlying his opponent's case").  Information sought by discovery is "relevant" if it "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978)).  The broad scope of discovery serves the purpose of allowing the parties to develop fully and crystallize concise factual issues for trial thereby preventing prejudicial surprises as well as conserving precious judicial energies.  *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973). In addition, the "district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)). *Southern Filter Media, LLC v. Halter,*2014 U.S. Dist. LEXIS 120837(M.D. La.Aug. 29, 2014).

Requests for production No. 9 through 19 are designed to discover information concerning the existence of and standard screening procedures for patients with symptoms similar to Plaintiff Beth Chaney MacNeill.  *See* App. 1, pp. 4-6.  In order to compel the production of information which is  relevant to the *subject matter* of the action generally, the rule requires that the party seeking discovery demonstrate *good cause. United States ex rel. Stewart v. La. Clinic*, NO. 99-1767 SECTION "N" (3), 2003 U.S. Dist. LEXIS 9401(E.D. La. June 4, 2003) (emphasis in original). Good cause exists for the discovery of this information because it is the only way to discover the individualized medical screening procedures within the Harris emergency department.

Plaintiff's requests are neither overly broad nor burdensome as evidenced by Harris' objection. Harris was able to electronically locate a specific number of charts in response to Plaintiff's request regarding patients with severe abdominal pain. *See* App. 2, pp. 6-13.  Harris located 10,407 records that reference abdominal pain and was able to narrow that search by adding the qualifier "severe" resulting in 4,224 records.  App. 2, pp. 6-13.  Defendant makes no attempt to narrow the search any further by using any of the additional specific symptoms provided by Plaintiff. *Id.* Plaintiff contends that Harris can narrow the search even further by using these word search parameters. Plaintiff progressively limits the scope of its requests by adding the following signs or symptoms:

- received contrast imaging and pneumoperitoneum and ascites was documented;
- status post abdominal surgery within 48 hours;

- status post gastric surgery within 48 hours;
- status post abdominal surgery within 48 hours and was provided CT imaging;
- status post total hysterectomy within 21 days;
- status post abdominal surgery within 48 hours, with pain radiating to either shoulder, nausea and vomiting, tachycardia and leukocytosis with a left shift;
- status post gastric surgery within 48 hours, with pain radiating to either shoulder, nausea and vomiting, tachycardia and leukocytosis with a left shift;
- status post abdominal surgery within 48 hours and was provided CT imaging;
- post abdominal surgery within 48 hours and provided CT imaging with oral contrast;
- status post abdominal surgery within 48 hours, CT imaging without enteric contrast was provided, and reported pneumoperitoneum and ascites; and
- status post abdominal surgery within 48 hours, nausea and vomiting, tachycardia, and CT imaging with enteric contrast was provided.

App. 1 pp. 4-6. These signs or symptoms are sufficiently specific to eliminate the burdensome nature of the requests.

Defendant also objects on the basis that Beth Chaney MacNeill presented to Harris with a pain level of 5 out of 10, stating that her pain level must be a 7 or above to be considered severe. Based on that assertion, Defendant argues that Plaintiff should not be allowed to discover the medical charts of patients with severe abdominal pain. Defendants assertion is misleading. Beth MacNeill presented to the MedStar paramedics with pain rated as a 10 out of 10 and Harris knew that because the paramedics administered Fentanyl to Ms. MacNeill which is prohibited without a doctor's authorization. *See* App. 3. It was only after she was given Fentanyl that her pain was reduced to a 5. App. 3. So, a doctor at Harris must have authorized the pain medication and therefore had knowledge of Beth MacNeill's pain level of 10 out of 10. Plaintiff's request for charts for patients exhibiting severe abdominal pain is highly relevant and reasonably calculated to lead to the discovery of admissible evidence.

### 4. Conclusion

EMTALA requires an emergency department to provide an appropriate medical screening examination. The appropriateness of the medical screening examination is individualized and determined by an analysis of the screening examination provided other patients at each hospital's emergency department.  Under EMTALA, a hospital must apply its screening procedure uniformly to all patients with similar complaints.  Evidence that a hospital did not follow its own screening procedures can support a finding of EMTALA liability for disparate treatment.  The charts requested by Plaintiff are crucial for Plaintiff to make the appropriate comparison mandated under EMTALA. Plaintiff has shown good cause for the production of medical charts because the appropriate comparison mandated under EMTALA cannot take place without production of medical charts of patients with symptoms similar to Beth Chaney MacNeill.  Plaintiff's requests for production are not overly broad because each request contains narrowing symptoms.  According to Fed. R. Civ. P. 26(b)(1) a party may discover any non-privileged information relevant to the subject matter of the lawsuit, or reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff asserts that the requests for production are not unduly burdensome as evidenced by Harris' ability to narrow the number of charts from those with abdominal pain to those with severe abdominal pain.  Plaintiff asserts that Harris may further limit the number of charts by using similar search methods.  Plaintiff's requests for charts of patients with severe abdominal pain are highly relevant.

## IV.    Prayer

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests that this court overrule the objections and compel Defendant Texas Health Harris Methodist Hospital Fort Worth to produce the documents requested.

Respectfully Submitted,


By  /s/ Robert Hammer_____
      **Robert W. Hammer**
      State Bar No.: 08854780

      **Michael J. Henry**
      State Bar. No.: 09482300


**ROBERT W. HAMMER**
675 North Henderson, Suite 300
Fort Worth, Texas  76107
robert@rhammerlaw.com
Telephone  817/ 332-8266
Telefax      817/ 332-8708

AND

**MICHAEL J. HENRY P.C.**
675 North Henderson, Suite 300
Fort Worth, Texas  76107
henry@henrytexlaw.com
Telephone  817/ 877-3303
Telefax      817/ 338-9109

      **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF CONFERENCE**


      I certify that on September 11, 2014, I conferred with James W. Hryekewicz regarding Plaintiff's Motion to Overrule Objections and Motion to Compel Discovery from Texas Health Harris Methodist Hospital Fort Worth.  An agreement could not be reached and this Motion is submitted for the Court's consideration.


      By  /s/ Robert Hammer_____
      **Robert W. Hammer**

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2014 I electronically filed the foregoing with the

Clerk for the U.S. District Court, Northern District of Texas, using the ECF system which will

send notification of such filing to the following counsel of record:

Russell G. Thornton
THIEBAUD REMINGTON THORNTON BAILEY, L.L.P.
1445 Ross Avenue, Suite 4800
Dallas, Texas 75202
rthornton@trtblaw.com
bmiciotto@trtblaw.com

Julie A. Mederos
MEDEROS ATTORNEYS
17950 Preston Road, Suite 990
Dallas, Texas 75252
jmederos@mederosattorneys.com
firm@mederosattorneys.com
kmcquilliams@mederosattorneys.com
skim@mederosattorneys.com

Gregory P. Blaies
James W. Hryekewicz
BLAIES & HIGHTOWER
421 W. Third Street, Suite 900
Fort Worth, Texas 76102
lindaroeder@bhilaw.com
lynnboyk@bhilaw.com
gregblaies@bhilaw.com
jwh@bhilaw.com

Jeffrey W. Ryan
Jarad Lee Kent
CHAMBLEE & RYAN P.C.
2777 N. Stemmons Frwy., Suite 1157
Dallas, Texas 75207
jwryanj@chambleeryan.com
jkent@chambleeryan.com
jarad.kent@gmail.com
bgreen@chambleeryan.com

Vernon L. Krueger
KRUEGER, BELL & BAILEY
1701 Market Street, Suite 318, LB 18
Dallas, Texas 75202
Vernon@kbbllp.com
ann@kbbllp.com
landon@kbbllp.com

Randy J. Hall
DECKER, JONES, MCMACKIN, MCCLANE, HALL & BATES
Burnett Plaza, Unit 46
801 Cherry Street, Suite 2000
Fort Worth, Texas 76102
rhall@deckerjones.com
pmaurice@deckerjones.com

/s/Robert Hammer
**Robert W. Hammer**